IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2022

**STATE OF TENNESSEE v. DANIEL LEON MCCAIG**

**Appeal from the Circuit Court for Dyer County**
**No. 17-CR-419    R. Lee Moore, Jr., Judge**

_____

**No. W2021-00736-CCA-R3-CD**

_____

Daniel Leon McCaig, Defendant, pled guilty to several offenses in 2018 and received a sentence to be served on Community Corrections. After a partial revocation of his alternative sentence in 2020, Defendant was arrested for new charges two separate times in 2021. As a result of the new charges, two probation violation reports were filed. After a hearing, the trial court revoked Defendant's probation and reinstated his eight-year sentence with credit for time served. Defendant appeals the revocation. After a de novo review, we affirm the revocation of probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Mitchell Raines, Assistant Public Defender – Appellate Division (on appeal); and James E. Lanier, District Public Defender and Martin Howie, Assistant District Public Defender (at hearing), for the appellant, Daniel Leon McCaig.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Danny L. Goodman, District Attorney General; and Karen Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In 2007, Defendant pled guilty to attempted aggravated sexual battery in Dyer County. As a result, he was sentenced to five years in incarceration with time served and released to supervised probation. Defendant was required to register as a sex offender and was subject to community supervision for life.

Defendant was indicted by the Dyer County Grand Jury in December of 2017 for three counts of selling more than .5 grams of methamphetamine. Defendant pled guilty to the charges on March 20, 2018, in exchange for three, concurrent, eight-year sentences. Defendant was ordered to serve the sentences on Community Corrections.

In January of 2020, a probation violation report was filed. This report does not appear in the record, but an order entered on August 25, 2020, by the Dyer County Circuit Court indicates that Defendant acknowledged the violation and agreed to "a partial revocation of time served." The trial court ordered the Tennessee Department of Correction ("TDOC") to supervise the balance of his eight-year sentence, where he was already being monitored as a sex offender. The trial court ordered jail credit from "8/23/19 to 6/29/20."

In February of 2021, Defendant was arrested and charged with possession of 45 grams of methamphetamine with intent to sell, possession of 45 grams of marijuana with intent to sell, unlawful possession of a weapon, possession of a firearm in the commission of a dangerous felony, and possession of drug paraphernalia. A probation violation report was filed on March 4, 2021, as a result of his arrest.

On May 3, 2021, Defendant was arrested on two assault charges. On May 4, Defendant was arrested for aggravated assault, violating an order of protection, and possession of a prohibited weapon. A second probation violation report was filed on May 5, 2021, as a result of the arrests on May 3 and 4. The trial court held a hearing on the violations on June 1.

At the hearing, Charles Smith, of the TDOC Board of Probation and Parole, testified that he was the probation officer for Defendant, appointed in August of 2020, when Defendant came off of community corrections and went onto probation. He noted that Defendant was a sex offender subject to community supervision for life.

Mr. Smith filed a report on March 4, 2021, alleging that Defendant was in violation of "rule number 2: On or about 2/21 [Defendant] was arrested for possession of meth with intent, possession of marijuana with intent, possession of a firearm in commission of a dangerous felony, unlawful possession of a weapon, theft of property, and possession of drug paraphernalia." Defendant was also alleged to be in violation of rule number 4, possessing a gun during the arrest.

In a "follow-up report", the probation officer indicated that Defendant was also arrested on May 3, 2021, for domestic assault and simple assault, and on May 4 for

- 2 -

aggravated assault, violation of an order of protection, and possession of a prohibited weapon. The prohibited weapon was a set of "brass knuckles" with a knife.

On cross-examination, Mr. Smith noted that Defendant had complied with the conditions of probation and community supervision for life with the exception of the new arrest.

Officer Brandon Hayes of the Dyersburg Police Department also testified at the hearing. He recalled that on February 21, 2021, he responded to a call about a potential domestic situation at the Kroger parking lot. When he arrived, Defendant was leaning into the driver's side window of a maroon car. The occupant of the maroon car, Hannah Boatright, was in a relationship with Defendant. She was seated in the driver's seat. Officer Hayes recalled seeing a black Honda sedan close by. Defendant had a key fob in his pocket that looked like it belonged to a Honda.

One of the officers on the scene smelled marijuana emanating from the maroon car. Officers asked and Defendant consented to a search of his person. Defendant was in possession of a loaded Smith & Wesson Model 37, inside his pants near his ankle. He denied ownership of the firearm. Ms. Boatright claimed ownership of the firearm. Defendant also produced a methamphetamine smoking pipe and over $2000 cash from his person. Defendant did not have any drugs on his person.

At that point, Defendant was placed under arrest based on the possession of the firearm. Officer Hayes inserted the key from Defendant's key ring in the door of the Honda. The key fit and turned inside the lock, but Officer Hayes did not open the vehicle at that time. Officer Hayes called the canine unit to the scene on his belief that there were narcotics located in the vehicle. The black Honda was searched after a K-9 made a positive indication on the vehicle on the passenger side. During a search of the vehicle, officers discovered 39 or 49 grams of methamphetamine, three sets of scales, and other items of drug paraphernalia in the floorboard on the passenger side. At least two of the sets of scales contained marijuana and/or methamphetamine residue.

Officer Chris Purcell testified that he was dispatched to Greentree Apartments on May 3 based on a report from dispatch that Defendant was "threatening to hurt himself and others." When Officer Purcell arrived on the scene, "a female [was sitting] in a car in front of the residence." She was identified as Brooke Pleasant.

As Officer Purcell approached the residence, he "heard the door open." When he "looked up it slammed shut again." He could "hear hollering and yelling inside." The door opened again, and Ms. Boatright exited the residence. She was "running out crying" and asked Officer Purcell to "please get him out of there."

Officer Purcell entered the residence. Defendant "came out with his hands up where [the officer] could see them." Officer Purcell asked Defendant to explain the situation. Defendant said that he was "trying to talk to [Ms. Boatright] about their relationship and they were having issues."

Defendant was eventually arrested for domestic assault and simple assault for his actions on May 3. According to Officer Purcell, there was no physical contact or confrontation. The charges were brought on the basis of Defendant's screaming, cursing, and aggressive actions.

Officer Jake Sadler was called to the residence of David Mansfield on May 4 after the report of an unwanted individual, Defendant, at the residence. When he arrived, Defendant was "walking down the driveway" away from the house. Defendant was on the phone and Ms. Boatright was on the porch of the house. Defendant claimed that he lived there with Mr. Mansfield and that Ms. Boatright showed up at the house. There "was an active no contact order on file" after the May 3 domestic arrest. Defendant was detained. He was asked if he could be searched, and he "owned up to having a knife in his pocket" that was a "steel metal knife made like knuckles that had a blade inside." Defendant was charged with possession of a prohibited weapon, violation of an order of protection, and aggravated assault of Mr. Mansfield.

Ms. Boatright testified on behalf of Defendant. She explained that they had been in a relationship for six to nine months at the time of the arrests although she had known Defendant for about ten years. Ms. Boatright testified that Defendant had a drug problem the whole time she knew him and that he would benefit from some form of rehabilitation. When asked about her ownership of the firearm found inside the vehicle, Ms. Boatright invoked her Fifth Amendment privilege against self-incrimination.

At the conclusion of the hearing, counsel for Defendant asked the trial court for a partial revocation so that Defendant could potentially get much needed rehabilitation for drug abuse. The trial court noted that Defendant pled guilty to serious charges in March of 2018 and violated probation within one year. The trial court recounted that Defendant was partially revoked in August of 2020 and given "the benefit of the doubt" by revoking to time served and placed back on probation. Another report was filed March 4 based on the incidents in the Kroger parking lot. The trial court recapped the facts of the Kroger arrest and expressed the opinion that it was "perfectly clear" that Defendant was "selling drugs" based on the amount of cash on his person and the quantity of drugs and presence of scales, all in violation of the terms and conditions of probation. Additionally, the trial court noted that even if the gun found on Defendant's person belonged to Ms. Boatright, it was on Defendant's "person" and still a violation of his probation. The trial court

continued, noting that despite that arrest, Defendant was arrested again in May for violating the order of protection and other offenses. The trial court determined that the State had proven by a "preponderance of the evidence" that Defendant violated his probation. Next, the trial court told Defendant he had been "given the opportunity" and had "for several years been creating problems with the law" and these new charges were just "additional problems." As a result, the trial court completely revoked Defendant's probation.

Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant does not challenge the trial court's determination that he repeatedly violated his probation with new charges. Instead, Defendant argues that the trial court improperly ordered him to serve the balance of his sentence in incarceration by failing to consider any alternative penalties and make findings on the record about the appropriate consequences, merely ordering Defendant to serve his sentence. He asks this Court to remand for a "proper evaluation under the guiding principles of law." The State disagrees, insisting that the trial court is not required to perform a second analysis after finding Defendant violated probation and that there is no abuse of discretion because the record contains evidence that supports the decision that a violation of probation occurred. As a result, the State insists that the trial court did not abuse its discretion and that Defendant's appeal "has no merit."

It is well-settled that a trial judge is vested with the discretionary authority to revoke probation if a preponderance of the evidence establishes that a defendant violated the conditions of his or her probation. *See* T.C.A. §§ 40-35-310, -311(e); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). "The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). After finding a defendant violated probation, a trial judge has the authority to impose one of several alternative consequences: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period by up to two years; or (4) return the defendant to probation on appropriate modified conditions. *See State Beard*, 189 S.W.3d 730, 735 and n.2 (Tenn. 2005) (quoting *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999));

Recently, there has been some confusion about the proper procedure for a trial court to follow before revoking a probationary sentence. The Tennessee Supreme Court issued an opinion attempting to "clarify and bring uniformity to the standards and principles applied by the trial courts and appellate courts in probation revocation proceedings." *State*

*v. Craig Dagnan*, 641 S.W.3d 751, 753 (Tenn. 2022). In *Dagnan*, the court determined that:

> probation revocation is a two-step consideration on the part of the trial court. *See* Tenn. Code Ann. §§ 40-35-308, -310, -311. The first is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation. This is not to say that the trial court, having conducted a revocation hearing, is then required to hold an additional or separate hearing to determine the appropriate consequence. The trial courts are required by statute to hold a revocation hearing. *Id.* § 40-35-311(b). However, there is no such requirement in the statutes or case law for an additional hearing before deciding on a consequence, and we decline to impose one. Defendant agrees that requiring a separate hearing solely to determine the consequence for violating probation is not necessary and would be too great of a burden on the trial courts. Still, we emphasize that these are two distinct discretionary decisions, both of which must be reviewed and addressed on appeal. Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden.

*Id.* at 757. Thus, a trial court is required to make two separate decisions: (1) whether to revoke probation; and (2) if probation is revoked, what consequence will apply. *Id.* The supreme court went on to explain the standard of review of a decision revoking probation as follows:

> abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record. It is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision. *See Bise*, 380 S.W.3d at 705-06. "This serves to promote meaningful appellate review and public confidence in the integrity and fairness of our judiciary." [*State v.*] *King*, 432 S.W.3d [316,] 322 [(Tenn. 2014)]. When presented with a case in which the trial court failed to place its reasoning for a revocation decision on the record, the appellate court may conduct a de novo review if the record is sufficiently developed for the court to do so, or the appellate court may remand the case to the trial court to make such findings. *See King*, 432 S.W.3d at 327-28.

*Id.* at 759.

Here, after hearing the proof, the trial court recounted the facts giving rise to the violation reports. The transcript included three pages of oral findings with regard to the facts leading up to the hearing and the testimony at the hearing. After reviewing the proof, the trial court told Defendant he had been given the "benefit of the doubt" on at least one occasion and that the State proved by a preponderance of the evidence that Defendant had violated his probation. The trial court then noted Defendant had "been creating problems with the law" for "several years" and that the most recent violations were "just . . . additional problems." While the trial court did not mention a two-step process or use any language indicating a separate exercise of discretion, in our view the trial court implicitly did both of these things as required by *Dagnan*. *Id.* at 759. The trial court separately determined that the preponderance of the evidence supported the revocation and then determined that Defendant's probation should be revoked in full. The trial court failed to mention alternatives available to Defendant other than full revocation of probation and ignored Defendant's insistence that drug addiction led to his repeated probation violations. As noted in *Dagnan*, "[i]t is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision. *Id.* (citing *Bise*, 380 S.W.3d at 705-06).

In our de novo review of the revocation decision, we determine that the record is sufficiently developed for this Court to affirm the judgment of the trial court. The facts presented indicated that Defendant violated the rules of his probation by selling drugs and possessing a gun, supporting a finding by the trial court that Defendant's probation should be revoked. Moreover, it is lavishly clear that "[m]easures less restrictive than confinement . . . [had] recently been applied unsuccessfully to the defendant" such that incarceration was appropriate, supporting the trial court's decision to order Defendant to serve his entire sentence. *See* § T.C.A. 40-35-103(1)(C). Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE

- 7 -